GREEN THUMB INDUSTRY OF MONROE, INC. v. WARREN COUNTY NURSERY, INC.

No. 7920SC894

(Filed 15 April 1980)

Process § 14.3— foreign corporation—insufficient contacts with N. C.—no jurisdiction by N. C. courts

The record did not show sufficient contacts on the part of defendant corporation in N. C. for the courts of this State to acquire *in personam* jurisdic-

tion over it where the evidence tended to show that defendant did not have any salesman who solicited in N. C.; through its routine advertising defendant mailed its price list to some N. C. addresses; over the last two years, plaintiff had received four magazines through the U. S. mail which included advertisements for defendant's nursery; two nurseries located in N. C. other than plaintiff had placed orders with defendant; plaintiff had placed six or seven orders over the last six years with defendant, four of the orders being placed by plaintiff's president while he was in Tennessee and the others being placed by phone; and the order for the shipment in question was placed by plaintiff with defendant at its place of business in Tennessee.

APPEAL by plaintiff from *Seay, Judge.* Judgment entered 3 May 1979 in Superior Court, UNION County. Heard in the Court of Appeals 21 March 1980.

Plaintiff filed its complaint against defendant seeking to recover damages for breach of certain implied warranties and for negligence on the part of defendant. The complaint alleged that plaintiff, a North Carolina corporation, had purchased certain trees from defendant, a Tennessee corporation, and that the trees were delivered to plaintiff with a root system which was not sufficient to sustain life, and all of them died. The court entered the following order, from which plaintiff appealed:

"THIS CAUSE coming on to be heard and being heard by the undersigned Judge on motion of defendant to dismiss pursuant to Rule 12(b) of the Rules of Civil Procedure for lack of jurisdiction over the person of the defendant and after hearing the evidence, the court makes the following:

### FINDINGS OF FACT

(1) Plaintiff is a corporation duly incorporated under the laws of the State of North Carolina with an office and principal place of business in Union County, North Carolina.

(2) Defendant is a corporation duly incorporated under the laws of the State of Tennessee with its principal place of business at Route 2, McMinnville, Tennessee.

(3) The defendant has no salesman who solicits business in North Carolina and is not licensed to do business in North Carolina.

(4) The defendant through its routine advertising mails out its price list to a mailing list, including some North Caro-

lina addresses. This catalog has been received once a year for approximately the last six years by plaintiff. The plaintiff has received four magazines, including 'American Nurseryman' and 'Nursery Business', which magazines are published for people in the nursery business through the United States mail over the last two years. These magazines include advertisements for defendant's nursery.

(5) Jordan-Evans Associates, P. A., a landscape architect firm has received this catalog two times per year for the past three years. Ed Evans, an employee of this firm visited Warren County Nursery on Thanksgiving of 1977 and was told by an employee of that nursery that they had sold to North Carolina contractors in the past and would continue to do so in the future. He was also told that they would arrange for shipment of their product to North Carolina.

(6) G. G. Gilmore, President of Gilmore Plant and Bulb, a North Carolina Corporation, has known the president of Warren County Nursery for some twenty-five years and has done business with Warren County Nursery during the past twenty-five years. Mr. Gilmore generally picks up Warren County Nursery's catalog at a show in Atlanta. It is Mr. Gilmore's customary practice to drive one of his vehicles to Tennessee to pick up his order, but he occasionally receives a portion of his order either by UPS or common carrier at his place of business in Julian, North Carolina. This occurs maybe once per year. Most of Mr. Gilmore's orders are placed by telephone from Julian, North Carolina to Warren County Nursery in Tennessee.

(7) Land Masters, Inc., a landscaping firm in Gastonia, North Carolina has received defendant's catalog at least one time per year. This firm has placed orders with Warren County Nursery in the past one and one-fourth years. The orders were placed by telephone from Gastonia to Tennessee. On several occasions, seedlings ordered by Land Masters, Inc. from Warren County Nursery have been delivered by bus and by UPS. Land Masters, Inc. has been billed by Warren County Nursery and has made payment by checks mailed from North Carolina and drawn on North Carolina banks.

(8) Brodus Honeycutt, a person engaged in the nursery business in Union County, North Carolina, has received defendant's catalog at least once per year for the past four or five years and has never purchased any of defendant's products.

(9) The plaintiff has done business with the defendant every year for approximately the last six years. The plaintiff has placed about six or seven orders with defendant of which approximately four orders were placed by plaintiff's president while visiting the defendant's nursery in Tennessee. The other orders were placed by plaintiff's president over the telephone.

(10) In January of 1978, plaintiff's president, Mr. Lowery Smith, went to Tennessee to purchase trees and shrubs to be used in a landscaping project located in Charlotte, North Carolina. Mr. Smith visited several nurseries, including Commercial Nursery where he purchased a large number of trees and shrubs. One of the items that he wanted to purchase was a quantity of 'Golden Raintrees'. When he found that Commercial Nursery did not have a sufficient quantity of 'Golden Raintrees' to fill his order, he asked if Warren County Nursery, Inc., did not have a large quantity of that type of tree and was told that they probably did and that he should check with them. Mr. Smith then went to defendant's place of business in McMinnville, Tennessee, inspected the trees and agreed to purchase these trees while at the defendant's place of business in Tennessee. A portion of this order was picked up by Mr. Smith while in Tennessee and brought back to North Carolina. The balance of the trees were shipped 'F.O.B. McMinnville' via Tilford Trucking Company to Mr. Smith's home in Union County, North Carolina.

(11) Subsequent to the delivery, the defendant billed the plaintiff for the purchase and plaintiff paid the defendant by a check drawn on a North Carolina bank by mailing the check to the defendant.

(12) This action was commenced by plaintiff in order to recover damages from defendant for alleged defects in the 'Golden Raintrees,' which were sold by defendant to plaintiff.

Plaintiff alleges in Paragraph 11 of the complaint that the trees were defective when the delivery took place.

Based upon the foregoing Findings of Fact the Court concludes as a matter of law that:

(1) The defendant has entered a special appearance solely for the purpose of challenging jurisdiction over its person.

(2) The activities and contacts of defendant within North Carolina have been casual, incidental, and insubstantial, and defendant has insufficient ties or connections with this state to be subjected to its jurisdiction in this case. If defendant is subjected to a judgment *in personam* in this case, it would unconstitutionally deprive the defendant of its property without due process of law.

ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that this action is hereby dismissed for lack of personal jurisdiction over defendant.

This 3 day of May, 1979.

s / THOMAS W. SEAY, JR.
Judge Presiding"

*William H. Helms, for plaintiff appellant.*

*Griffin, Caldwell & Helder, by H. Ligon Bundy, for defendant appellee.*


ERWIN, Judge.

The only question for our determination is: Did the trial court commit error by allowing defendant's motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(2), of the Rules of Civil Procedure for lack of personal jurisdiction over defendant? For the reasons that follow, we answer, "No," and affirm the judgment entered by the trial court.

The resolution of the question of *in personam* jurisdiction involves a two-fold determination: (1) do the statutes of North Carolina permit the courts of the jurisdiction to entertain this ac-

tion against defendant, and (2) does the exercise of this power by the North Carolina courts violate due process of law. *Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977). The grounds on which a court may assert personal jurisdiction over a person are set forth in G.S. 1-75.4.

G.S. 1-75.4(2) provides:

"§ 1-75.4. *Personal jurisdiction, grounds for generally.* — A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) of the Rules of Civil Procedure under any of the following circumstances:

. . . .

(2) Special Jurisdiction Statutes. — In any action which may be brought under statutes of this State that specifically confer grounds for personal jurisdiction."

G.S. 55-145 is just such a special jurisdiction statute; it reads in pertinent part as follows:

"§ 55-145. *Jurisdiction over foreign corporations not transacting business in this State.* — (a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

. . . .

(2) Out of any business solicited in this State by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the State; or

(3) Out of the production, manufacture, or distribution of goods by such corporation with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed, regardless of how or where the goods were produced, manufac-

tured, marketed, or sold or whether or not through the medium of independent contractors or dealers . . .”

It is generally accepted that North Carolina's long-arm statute (G.S. 1-75.4) should be liberally construed in favor of finding personal jurisdiction, subject, of course, to due process limitations. *Leasing Corp. v. Equity Associates,* 36 N.C. App. 713, 245 S.E. 2d 229 (1978). In a case considering G.S. 55-145(a)(1), *Byham v. House Corp.,* 265 N.C. 50, 57, 143 S.E. 2d 225, 232 (1965), our Supreme Court stated, citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L.Ed. 2d 223, 78 S.Ct. 199 (1957): “It is sufficient for the purposes of due process if the suit is based on a contract which has substantial connection with the forum state.” *See also Chadbourn, Inc. v. Katz,* 285 N.C. 700, 208 S.E. 2d 676 (1974). *Parris v. Disposal, Inc.,* 40 N.C. App. 282, 253 S.E. 2d 29, *dis. rev. denied,* 297 N.C. 455, 256 S.E. 2d 808 (1979). The due process doctrine requires that in order to subject this nonresident corporation to *in personam* jurisdiction, it must have certain minimum contacts with this State to the extent that the suit does not offend “ ‘traditional notions of fair play and substantial justice.’ ” *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L.Ed. 95, 102, 66 S.Ct. 154, 158 (1945).

Application of the minimum contact rule varies with the quality and nature of defendant's activities, but it is essential in each case that there be some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 2 L.Ed. 2d 1283, 78 S.Ct. 1228 (1958); *Parris v. Disposal, Inc., supra.* The existence of minimal contacts is a question of fact. *Chadbourn, Inc. v. Katz, supra.*

Here, the evidence showed, and the court found: that defendant does not have any salesman who solicits in North Carolina; that defendant, through its routine advertising, mails its price list, which includes some North Carolina addresses; and that over the last two years, plaintiff has received four magazines through the United States mail, including “American Nurseryman” and “Nursery Business,” which magazines are published for people in the nursery business. These magazines include advertisements for

defendant's nursery. G. G. Gilmore, president of Gilmore Plant and Bulb, testified that it is his customary practice to drive one of his vehicles to Tennessee to pick up his order, "but he occasionally receives a portion of his order either by UPS or common carrier at his place of business in Julian, North Carolina. This occurs maybe once per year. Most of Mr. Gilmore's orders are placed by telephone from Julian, North Carolina to Warren County Nursery in Tennessee."

One other North Carolina company had placed orders with defendant by telephone from Gastonia to Tennessee, was billed by defendant, and had paid by checks mailed from North Carolina and drawn on North Carolina banks. Plaintiff has done business with defendant for six years and has placed six or seven orders with defendant of which four were placed by plaintiff's president while in Tennessee. Others were placed by plaintiff's president over the telephone. The order for the shipment in question was placed by plaintiff with defendant at its place of business in Tennessee. The findings of the trial court are supported by competent evidence and are, therefore, conclusive on appeal. *Goldman v. Parkland*, 277 N.C. 223, 176 S.E. 2d 784 (1970).

The record in this case does not show sufficient contacts on the part of defendant in North Carolina for the courts of this State to acquire *in personam* jurisdiction over it. The judgment entered by the trial court was in all respects proper.

Judgment affirmed.

Judges MARTIN (Robert M.) and CLARK concur.