RAYMOND L. MARTIN v. BERYL HELEN MARTIN.

(Filed 20 January, 1961.)

**1. Divorce and Alimony § 1—**

In order for a court to have jurisdiction of an action for divorce, it is required not only that the court have jurisdiction of the parties, but also that it have jurisdiction of the marital status, which is the *res* to be adjudicated, and in order for the court to have jurisdiction of the status, it is necessary that one of the parties be a resident of this State, which requires that such party have his domicile here. G.S. 50-8.

**2. Domicile § 1—**

In order to be a resident of this State, a party must not only reside here but have the intention of making his permanent home here, to which, whenever absent, he intends to return, and from which he has no present intention of moving.

**3. Army and Navy: Domicile § 1: Divorce and Alimony § 1—**

G.S. 50-18 cannot be given the effect of making this State the domicile of military personnel stationed in this State under military orders even though such presence here be for a duration in excess of six months, but the statute does have the effect of enabling a serviceman to establish this as the State of his residence while so stationed here if he actually intends to make this the State of his permanent residence.

**4. Domicile § 1—**

A person's declarations as to his intentions are not conclusive in establishing domicile, even when considered together with testimony as to his conduct and acts, but such testimony and evidence are circumstances from which the jury may find the fact of domicile.

**5. Same: Army and Navy: Divorce and Alimony § 1— Whether serviceman had established residence here held for jury on evidence.**

Testimony of a serviceman that while stationed in this State under

military orders he formed the intent to make this State his home, that he listed and paid his personal property taxes and paid his income tax here, registered his automobile and obtained an operator's license therefor in this State, and was stationed here for more than a year under military orders, is sufficient to be submitted to the jury on the question of whether he had established a domicile here, but is not conclusive, since the jury may find from such testimony and other testimony by him that he merely intended to establish a legal residence here at some future time, and therefore an instruction that if the jury should find from the greater weight of the evidence that he had been stationed here pursuant to military duty for a period of six months prior to the institution of his action for divorce to answer the issue of residence in the affirmative, must be held for error as insufficient to adjudicate the question of jurisdiction.

APPEAL by defendant from *Williams, J.,* May 1960 Civil Term, of CUMBERLAND.

This is a civil action. Plaintiff sues for absolute divorce on the ground of two years separation. Defendant answers plaintiff's complaint and specifically denies material allegations thereof and counterclaims for alimony without divorce.

Plaintiff is a native of Missouri. He served in the Army of the United States during World War II. After the war he attended college in Missouri. Later he became an instructor at the University of Detroit. While there he met defendant — in July 1950. Shortly thereafter he re-entered the Army. He is a commissioned officer. While he was stationed at Fort Meade, Maryland, he and defendant were married on 2 December 1950. A child was born to this union on 1 October 1951. The parties separated at Alexandria, Virginia, 1 July 1957. In the meanwhile plaintiff had served at military posts in Maryland, New Jersey, Virginia and overseas. Prior to the separation plaintiff had never resided in North Carolina. In July 1958 plaintiff was assigned to Fort Bragg, North Carolina, and served there continuously until August 1959. He resided on the military reservation. This action was instituted 6 July 1959. About 20 August 1959 plaintiff was assigned to Fort Leavenworth, Kansas, and was stationed there at the time of the trial. Defendant and the child reside in the State of Michigan. Defendant has never at any time resided in North Carolina. Summons and copy of the complaint were personally served on her in Michigan.

Both parties were present at the trial, testified and called witnesses in support of their respective positions.

Appropriate issues were submitted to and answered by the jury. Verdict was favorable to plaintiff.

From judgment in accordance with the verdict defendant appealed and assigned errors.

*Butler, High & Baer for plaintiff.*
*Tally, Tally & Taylor and Jesse M. Henley, Jr., for defendant.*

MOORE, J. Plaintiff alleges that he "has been a resident of Cumberland County, State of North Carolina, for more than six months next preceding the bringing of this action . . . and has resided on the Fort Bragg Military Reservation in Cumberland County, North Carolina, for more than six months next preceding the commencement of this action." Answering, defendant avers that "plaintiff does not intend to make North Carolina his permanent home nor his home for an indefinite period of time and he is therefore not a resident of North Carolina."

Jurisdiction in divorce actions is conferred by statute. The requirement that one of the parties to a divorce action shall have resided in the State for a specified period of time next preceding the commencement of the action is jurisdictional. If the element of residence is lacking the court has no jurisdiction to try the action or grant a divorce. *Henderson v. Henderson,* 232 N.C. 1, 9, 59 S.E. 2d 227; *Ellis v. Ellis,* 190 N.C. 418, 421, 130 S.E. 7.

In an action for divorce "The plaintiff shall set forth in his or her complaint that the complainant or defendant has been a resident of the State of North Carolina for at least six months next preceding the filing of the complaint . . . ." G.S. 50-8.

This Court has declared that: "In order to constitute residence as a jurisdictional fact to render a divorce decree valid under the laws of this State there must not only be physical presence at some place in the State but also the intention to make such locality a permanent abiding place. There must be both residence and *animus manendi. Reynolds v. Cotton Mills,* 177 N.C. 412, 99 S.E. 240; *Roanoke Rapids v. Patterson,* 184 N.C. 135, 113 S.E. 603; *S. v. Williams,* 224 N.C. 183 (191), 29 S.E. (2d), 744. To establish a domicile there must be residence, and the intention to make it a home or to live there permanently or indefinitely. *S. v. Williams, supra." Bryant v. Bryant,* 228 N.C. 287, 289, 45 S.E. 2d 572 (1947).

The holding in the Bryant case is in accord with the decisions of the Supreme Court of the United States. In *Williams v. North Carolina,* 325 U.S. 226, 229 (1945), it is said: "Under our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicil. *Bell v. Bell,* 181 U.S. 175; *Andrews v. Andrews,* 188 U.S 14. The framers of the Constitution were familiar with this jurisdictional prerequisite, and since 1789 neither this Court nor any other court in the English-speaking world has questioned it.

Domicil implies a nexus between persons and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance. The domicil of one spouse within a State gives power to that State, we have held, to dissolve a marriage wheresoever contracted."

"In a strict legal sense that place is properly the domicil of a person where he has his true, fixed, permanent home and principal establishment, and to which he has, whenever he is absent, the intention of returning, and from which he has no present intention of moving." 17A Am. Jur., Domicil, S. 2, pp. 194-5.

In 1959 the General Assembly of North Carolina passed an Act which provides that in a divorce action "allegation and proof that the plaintiff or the defendant has resided or been stationed at a United States army, navy, marine corps, coast guard or air force installation or reservation or any other location pursuant to military duty within this State for a period of six months next preceding the institution of the action shall constitute compliance with the residence requirements" for divorce, "provided that personal service is had upon the defendant or service is accepted by the defendant, within or without the State as by law provided." G.S. 50-18.

Defendant contends that the residence requirement in G.S. 50-18 involves domicile, and that the jurisdictional requisite that there be physical presence plus *animus manendi* has not been changed by this statute. With this contention we agree. Furthermore, we do not understand that plaintiff seriously contends otherwise.

The Legislative Assembly of the Virgin Islands adopted a statute providing that mere presence of plaintiff in the district for a period of six weeks shall be *prima facie* evidence of domicile and where the defendant has been personally served within the district or enters a general appearance the court shall have jurisdiction of the divorce action without further reference to domicile. The United States Court of Appeals, Third Circuit, in passing upon the validity of the statute, said in *Alton v. Alton*, 207 F. 2d 667 (1953):

> "The requirements for effecting a change of domicile by a person having legal capacity are clear and undisputed. There must be physical presence in the place where domicile is claimed and there must be the intent to make that place the home of the person whose domicile is in question." (p. 671.)
>
> "If domicile is really the basis for a divorce jurisdiction . . . then six weeks' physical presence without more is not a reasonable way to prove it." (p. 672.)

·"The presumption must, therefore, be regarded as either an unreasonable interference by the legislative branch of the insular government with the exercise of the judicial power by the judicial branch or as an attempt by the legislature to convert the suit for divorce into what is in fact a transitory action masquerading under a fiction of domiciliary jurisdiction. We think that looked at in any of these ways the portion of the statute which provides for such a prima facie conclusion is invalid." (p. 673.)

"We think that adherence to the domiciliary requirement is necessary if our states are really to have control over the domestic relations of their citizens." (p. 676.)

"Our conclusion is that the second part of this statute conflicts with the due process clause of the Fifth Amendment and the Organic Act. Domestic relations are a matter of concern to the state where a person is domiciled. An attempt by another jurisdiction to affect the relation of a foreign domiciliary is unconstitutional even though both parties are in court and neither one raises the question." (p. 677.)

*Jennings v. Jennings* (Ala. 1948), 36 So. 2d 236, deals with an Alabama statute which provides in substance that the courts of that State shall have jurisdiction of divorce actions wherein both parties are before the court even though both reside in another State. In declaring the statute invalid the Court declared:

"Jurisdiction, which is the judicial power to grant a divorce, is founded on domicile under our system of law. (Citing authorities.) This is true because domicile in the state gives the court jurisdiction of the marital status or the res which the court must have before it in order to act. (Citing authorities) The domicile of one spouse, however, within the state gives power to that state to dissolve the marriage. (Citing authorities) . . . Jurisdiction of the res is essential because the object of a divorce action is to sever the bonds of matrimony, and unless the marital status is before the court, the court cannot act on that status. . . . Futhermore, it is recognized that unless one of the parties has a residence or domicile within the state, the parties cannot even by consent confer jurisdiction on the courts of that state to grant a divorce. 17 Am. Jur. p. 273.

" '* * * The principle dominating the subject is that the marriage relation is so interwoven with public policy that the consent of the parties is impotent to dissolve it contrary to the law

MARTIN *v.* MARTIN.

of the domicil. * * *" *Andrews v. Andrews, supra* (188 U.S. 14, 23 S. Ct. 244). . . . the legislature of a state cannot confer on the courts of that state a power which is not within the power of the state to confer on the legislature."

However, there is authority to the contrary. Statutes relating to servicemen, similar to N.C.G.S. 50-18, have been held to confer jurisdiction where there is merely a showing of presence in the State for the requisite period. The rationale of decision in these instances is that "It is within the power of the Legislature to establish reasonable bases of jurisdiction other than domicile." *Wallace v. Wallace* (N.M. 1958), 320 P. 2d 1020; *Craig v. Craig* (Kan. 1936), 56 P. 2d 464. We do not agree with the conclusions reached in these decisions. We hold that in order for the courts of this State to exercise jurisdiction affecting the marital status, at least one of the parties to the action must be domiciled in the State. Mere presence is insufficient.

What, then, is the effect of G.S. 50-18? In some cases it has been held that legal residence or domicile in a state cannot be acquired by residence on a military reservation under United States jurisdiction within the borders of the State. 21 A.L.R. 2d, Anno: Divorce — Domicile — Soldiers or Sailors, s. 8, p. 1173. G.S. 50-18 is an expression of policy by the General Assembly that a serviceman stationed on a military reservation in the State is capable of establishing his domicile in North Carolina. The statute removes the barriers which might prevent a serviceman so situated from establishing a legal residence in this State where he actually has the present intention of changing his domicile to this State.

The defendant in the case *sub judice* moved for nonsuit on the ground that plaintiff failed to make a *prima facie* showing that he is a *bona fide* resident of North Carolina. The motion was overruled.

Plaintiff testified in part: "I am in the Army. In July, 1958, I was stationed at Fort Bragg, N. C. I was stationed there from that time up until August of 1959. . . . starting about 1955, I used to come down on special projects at Ft. Bragg while I was stationed in the Pentagon. . . . I have formed the intent to make North Carolina my home. I have always liked North Carolina since the first time I was down here and I have decided this will be my home as soon as I can make a permanent home. This will definitely be where I will settle. . . . I have registered my car here. I have driver's license from here. I have paid my income tax to this area and any other tax, of course, while I am here . . . . I obtained my driver's license in North Carolina in . . . July 1958, right after coming here. I have listed my car for

personal property tax here in North Carolina . . . . Since going to Leavenworth, I have come back here for vacation . . . . I intend to make North Carolina my home as soon as the service contingencies will permit. . . . I plan to get a little place on the beach when I retire and that is certainly what I would like to do. . . . I formed my intent to become a resident of North Carolina back in 1955 when I really became interested in that. I have never changed my original intent; I am now a resident of North Carolina and hope to continue to be."

We think this evidence sufficient to be submitted to the jury on the question of legal residence. "A person's testimony regarding his intention with respect to acquiring or retaining a domicil is not conclusive, although ordinarily it will make a *prima facie* case if not contradicted. The conduct and the various acts of the party are not ordinarily conclusive of the question, but are regarded rather as circumstances from which the jury in its discretion may find the fact. All of the surrounding circumstances and the conduct of the person must be taken into consideration." 17A Am. Jur., Domicil, s. 95, pp. 264-5. When taken in the light most favorable to plaintiff, his evidence tends to show that in 1955 he formed the intent to make North Carolina his home, that beginning in 1958 he actually resided within the State for more than a year, that upon his arrival he registered his automobile in the State, obtained North Carolina operator's license, paid income tax, listed and paid personal property taxes, and that he considers North Carolina his home and intends to make it his home permanently. From these facts a jury might justifiably conclude that he has acquired a domicile in North Carolina.

Defendant excepts to the following portion of the judge's charge: "And I instruct you, if you find by the greater weight of the evidence that the plaintiff has been stationed at Fort Bragg, U. S. Army Post or Reservation pursuant to military duty for a period of six months prior to the bringing of this action, you will answer that first issue YES; unless you so find, you will answer it NO."

It is our opinion that in so instructing the jury the trial judge fell into error. This instruction omits the requirement of intent to adopt North Carolina as legal residence.

Plaintiff contends that the error is harmless in that plaintiff's evidence is uncontradicted and a peremptory instruction would have been permissible. It is true that there was no substantial contradictory testimony on the part of defendant and her witnesses on the issue of residence. But plaintiff's evidence is conflicting. From his testimony the inference is permissible that he established his domicile in North Carolina more than six months prior to the institution of the action

and that he was a *bona fide* resident of this State at the time the action was begun. On the other hand the jury may find from his testimony that defendant intends at some future time to make his home here and has not established a domicile in North Carolina. A mere intention to establish a legal residence at some future time is not sufficient basis for a finding of domicile so as to give the court jurisdiction of a divorce action. 21 A.L.R. 2d, Anno: Divorce — Domicile — Soldier or Sailor, s. 6, pp. 1170-2; and cases there cited.

The court should have instructed the jury upon the issue of residence that the burden is on plaintiff to satisfy the jury: (1) that plaintiff was stationed on the Fort Bragg military reservation for six months next preceding the institution of the action, and (2) that during said period plaintiff had the intention to make North Carolina his permanent home or to live there indefinitely. The error in failing to so charge is prejudicial.

The question of jurisdiction has not been determined.

New trial.